# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 12-10203-MLB |
| ) | |
| CALDEE JORDAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to suppress. (Doc. 14). The motion is fully briefed and the court conducted an evidentiary hearing on December 10, 2012. (Doc. 20). The motion to suppress is denied for the reasons herein.

**I. FACTS**

This case arises from a traffic stop that occurred on July 27, 2012, in Wichita, Kansas. Officer Robert Bachman was patrolling and observed defendant Caldee Jordan leave his home in his Escalade. Bachman was familiar with Jordan and knew that Jordan was associated with a drug house in the northeast area of Wichita.[1] Jordan spends most of his day at the drug house and is not employed. In June 2010, Jordan was stopped in his Escalade and Bachman had been on the scene as a backup officer. The Escalade was searched and Detective Martin

---

[1] Approximately four to five years ago, the drug house was located in the 500 block of Pennsylvania. That house was torn down in order to build a store. The new location of the drug house is 131 N. Ash. The same individuals who frequented the Pennsylvania house now frequent the house on Ash.

found drug paraphernalia with heroin[2].

On July 27, Bachman had reason to believe that there was a current arrest warrant pending for Jordan. Bachman followed Jordan and called into dispatch. While Jordan was inside a store, Bachman was informed by dispatch that there was an outstanding arrest warrant for Jordan.[3] Bachman waited for Jordan to leave the store and called for backup.

When Jordan drove away from the store, Bachman followed at a distance. At that time, Officer David Goodman arrived and pulled in behind Jordan. Both officers activated their lights and sirens. Jordan did not stop and proceeded to commit several moving violations, including speeding and running stop signs. Jordan finally stopped when he arrived at his house approximately one to two minutes after the sirens were activated. Jordan exited his Escalade and both officers told Jordan that he was under arrest. Jordan was taken into custody and searched by Bachman. Bachman found a large amount of cash in Jordan's pocket and more cash in his wallet. Bachman returned the cash to Jordan. Jordan was transported to jail and later booked by Bachman for felony fleeing and eluding an officer. At the jail, Bachman seized $1189 from Jordan.

Bachman and Goodman did not search the Escalade at any time. Goodman remained with the vehicle and waited for a detective to arrive. Detective Bryan Martin arrived and was informed of the arrest of Jordan. Martin deployed his drug dog around the Escalade. The dog

---

[2] Jordan was charged with possession of drug paraphernalia.

[3] The warrant was issued in a civil case in Sedgwick County District Court. Its validity is not in question.

did not give any indication of drugs. Because of the felony charge of evading and eluding, Martin believed that the car would be forfeited. Also, due to Jordan's history as a drug user, Martin believed that Jordan had illegal drugs or paraphernalia in the Escalade. Martin opened the door of the Escalade and placed the dog inside. The dog made an indication and Martin searched the Escalade. Martin found 30-40 balloons of a substance which was later determined to be heroin.

Later that day, Detective Maria Heimerman seized the Escalade pursuant to the forfeiture statute, K.S.A. 60-4104. Heimerman searched the Escalade and removed all personal property. Heimerman then interviewed Jordan. Heimerman read Jordan his *Miranda* rights and also reviewed his rights with him on a form. Jordan signed the form and gave Heimerman a statement.

**II. ANALYSIS**

Jordan asserts that the search of his Escalade was unconstitutional and asks that all evidence seized in that search and Jordan's statement be suppressed.

### A. Search[4]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

The officers had a reasonable basis to stop Jordan and arrest him pursuant to the warrant. The initial dog sniff completed by

---

[4] Jordan does not challenge his stop and arrest. Nevertheless, the court finds that the stop was justified in order to execute the arrest warrant.

-3-

Martin's dog does not violate the Fourth Amendment as long as the detention is not unreasonably prolonged. Illinois v. Caballes, 543 U.S. 405 (2005). Here, it was not. Jordan had already been arrested and transported to jail. Therefore, the initial dog sniff around the exterior of the Escalade was not a violation of Jordan's Fourth Amendment rights. However, the initial sniff did not result in an indication that drugs were present. The question then becomes whether an officer may open the door to Jordan's vehicle in order for the dog to do a sniff inside. He may not.

### Probable Cause

When an officer intentionally intrudes into the vehicle in order to perform a drug sniff, it constitutes a search within the meaning of the Fourth Amendment. United States v. Montes-Ramos, No. 07-2027, 2009 WL 3138866 (10th Cir. Oct. 1, 2009); United States v. Winningham, 140 F.3d 1328, 1330-31 (10th Cir. 1998). Because Martin did not have a warrant to search the Escalade, the search must fall under one of the exceptions to the warrant requirement. Id. The government contends that the search was reasonable because Martin had probable cause. "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." United States v. Edwards, 242 F.3d 928, 939 (10th Cir. 2001)(citing United States v. Nielsen, 9 F.3d 1487, 1489-90 (10th Cir. 1993)).

In this case, the officers had prior dealings with Jordan and, on one occasion, had searched the Escalade and found heroin and drug paraphernalia. They also had knowledge that Jordan frequented a known drug house. However, there is no evidence that Jordan was at the drug

house on the day of the stop. Jordan did commit several moving violations in order to flee or elude the officers. However, the chase only lasted a couple of minutes and Jordan was not traveling at a high rate of speed. Because the court finds that the heroin would have been discovered after the lawful seizure of the Escalade, infra, the court declines to make a probable cause determination.

## Inevitable Discovery

K.S.A. 60-4104(z) and 60-4107 authorize forfeiture for property that is utilized in connection with a felony violation of fleeing or attempting to elude a police officer.[5] Felony fleeing or eluding occurs when a driver willfully fails to stop after an officer has activated his sirens and commits five or more moving violation during the chase. K.S.A. 8-1568(b). Bachman testified that during the chase, Jordan failed to stop at several stop signs, ran one light and was driving in excess of the posted speed limit. Jordan did not challenge or present evidence to contradict Bachman's testimony regarding Jordan's traffic infractions. Bachman then booked Jordan under felony fleeing or eluding an officer.[6]

Both Martin and Heimermann testified that they believed the Escalade was subject to forfeiture because of Jordan's arrest for felony fleeing or eluding an officer. Under Kansas law, property may be seized by a law enforcement officer upon process issued by a district court or "without process on probable cause to believe the

---

[5] Jordan makes no attempt to challenge the validity of these statutes.

[6] The statute describes this charge as fleeing or eluding. However, at times, Bachman referred to this charge as evading or eluding.

property is subject to forfeiture under this act." K.S.A. 60-4107(b). K.S.A. 60-4104 provides that property is subject to forfeiture even if there is not a prosecution or conviction for the underlying offense giving rise to the forfeiture. After a review of the applicable statutes and Bachman's testimony of Jordan's actions prior to the stop, the court finds that there was probable cause to believe that the Escalade would be subject to forfeiture. Therefore, section 4107(b) allowed Heimerman to seize the Escalade.

After a seizure of property under section 4107(b), K.S.A. 22-2512 requires all personal property to be documented and held by the officer who seizes the property. Therefore, the heroin would have been discovered when Heimerman completed her search to remove all personal property from the Escalade.

Jordan's motion to suppress the heroin seized in the search of the Escalade is accordingly denied.

### B. Statement

After being transported to the jail, Jordan made incriminating statements during his interview. Jordan received his Miranda rights prior to the statements. Heimerman, whom the court finds to be a credible witness, testified that Jordan was read his Miranda rights prior to the interview and that he agreed to talk with Heimerman. In addition, the court has reviewed the transcript of the interview.

A Miranda waiver is valid when it is given voluntarily, knowingly, and intelligently. Miranda v. Arizona, 384 U.S. at 444. To be voluntary, a statement must be the product of a rational intellect and free will. Townsend v. Sain, 372 U.S. 293, 307 (1963). Therefore, a statement is admissible when it is given freely and

-6-

voluntarily, after a knowing and intelligent waiver of one's constitutional rights. Jackson v. Denno, 378 U.S. 368, 385-86 (1964). A finding of involuntariness requires a finding of coercive police action. Colorado v. Connelly, 479 U.S. 157, 167 (1986).

In his memoranda, Jordan moves to suppress his statements. Jordan, however, does not state the reason why the statements should be excluded. The court finds that Jordan was read his Miranda rights and subsequently waived them. The court also finds the statements Jordan made were voluntarily given. Jordan's motion to suppress his statements is denied.

### III. Conclusion

Jordan's motion to suppress is denied. (Doc. 14).

IT IS SO ORDERED.

Dated this __17th__ day of December 2012, at Wichita, Kansas.

> s/ Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE